LOWE v. SEABOARD AIR LINE RY.

COMMON CARRIERS—FREIGHT—INTERSTATE COMMERCE—PENAL STAT-UTE.—The act, 22 Stat., 120, providing that a common carrier shall pay a penalty of $500 for shipping freight by a route other than that designated by the shipper, is a burden on interstate commerce, when applied to goods shipped from a foreign State into this State, and void, and cannot be enforced in the absence of proof showing a violation thereof within this State.

Before GAGE, J., Union, September term, 1901. Af-firmed.

Action by J. A. Lowe against Seaboard Air Line Ry. Co. From judgment of nonsuit, plaintiff appeals.

*Messrs. Hydrick & Sawyer,* for appellant, cite: *Act not a burden on interstate commerce:* 56 S. C., 137; 169 U. S., 163; 17 Ency., 2 ed., 95, 102; 14 L. R. A., 596; 34 L. R. A., 105.

*Messrs. Glenn & McFadden,* contra, cite: *The act is a burden on interstate commerce:* 17 Ency., 74, 75, 95, 105; 9 Wheat., 1; 118 U. S., 244; 173 U. S., 285; 22 S. C., 220.

March 29, 1902. The opinion of the Court was deliv-ered by

MR. JUSTICE JONES. This action was brought to recover a penalty, under the act of 1896, 22 Stat., 120, for varying the routing designated by the shipper. A nonsuit was granted on two grounds: (1). That the said act is uncon-stitutional, in so far as it attempts to regulate interstate commerce. (2). That the diversion from the route desig-nated by the shipper took place in North Carolina, and for such diversion defendant was not liable under a penal stat-ute of South Carolina. The appeal questions the correct-ness of said ruling.

The defendant is a railroad corporation, organized under

the laws of Virginia and also of North Carolina, and was and is doing business in this State. It appears from the "Case" that "the plaintiff introduced testimony tending to show: That on and prior to November 27, 1901, he resided at or near Lilesville, N. C., and on that date, he delivered to the defendant, at Lilesville, his household goods for shipment to Union, S. C., where he has since resided; that before the shipment he stated to the defendant's agent that he wished to ship his goods without having them transferred from one car to another, and was informed that he could do so by shipping them *via* Charlotte, N. C., and Spartanburg, S. C.; that the freight charges would be $25.34 (about 70 cents a hundred), which was more than they would have been, if shipped *via* Carlisle, S. C., by which route the charges would have been from 48 to 50-odd cents a hundred; that the goods, if shipped by Carlisle, would have to be transferred from the defendant's road to the Southern by wagon from one depot to the other; that plaintiff paid the higher rate *via* Charlotte and Spartanburg, and delivered his goods to the defendant, placing them in a car furnished by defendant and sealing the car, according to instructions from defendant's agent; that both before and at the delivery of the goods to defendant, plaintiff designated the route *via* Charlotte and Spartanburg as that over which he wished his goods shipped, and so instructed defendant's agent, who assured him that they would be shipped by that route. The goods were actually shipped by way of Carlisle, S. C.; that the lines of railroad operated by defendant from Lilesville diverged at Monroe, N. C., one branch going to Charlotte, and the other to Carlisle, and that the plaintiff's goods were diverted from the designated route at Monroe, N. C.; that they could have been shipped *via* Charlotte and Spartanburg to Union; that the plaintiff could not read, and did not know how the bill of lading delivered to him by defendant or waybill was marked for the freight to be shipped, but thought that it was made out for shipment according to his instructions and the route designated. That at time bill of lading

was issued, plaintiff's son, who was assisting him, asked the agent if the route designated ought not to be put on the bill of lading, and the agent told him that he didn't put it on bill of lading, but that it was marked on waybill that goes with the car, which the conductor has to show him which way the car is going."

The action was brought under sections 5 and 6 of said act, which are as follows: "Sec. 5. That all persons shipping from, into, within or through this State, shall have the right to designate the route or routes by which said goods shall be shipped, and that it shall be unlawful for any corporation or person other than the *holder* of the bill of lading to vary said routing so designated, or to ship the same by any other route, or to receive said goods if so diverted, unless the route so designated shall be interrupted or incapable of being used at the time by strike or casualty, preventing the running of trains thereof.

"Sec. 6. That any transportation company violating the provisions of any of the sections of this act wilfully or knowingly shall be subject to a suit for each violation thereof at the instance of any person or owner of goods, or other persons or corporations, and upon proof of such violation, the said party instituting the same shall be entitled to recover a penalty of five hundred dollars for such violation. Each violation of this act shall constitute a separate cause of action."

While a State, under its police power, may adopt regulations designed to promote domestic order, morals, health and safety, even though such regulations may indirectly or remotely affect interstate commerce, yet it cannot adopt regulations which directly trammels or burdens interstate commerce, because such would be an invasion of the power exclusively vested in Congress by the Federal Constitution. *State Freight Cases,* 15 Wall., 232; *Hall* v. *DeCuir,* 95 U. S., 485; *Wabash etc. Ry. Co.* v. *Illinois,* 118 U. S., 557; *Covington etc. Bridge Co.* v. *Kentucky,* 154 U. S., 204; *Railroad Commissioners* v. *Railroad Co.,* 22 S. C., 220. It

is not doubted that transportation is an essential part of commerce, and that transportation of freight from a point in North Carolina to a point in South Carolina is interstate commerce. The portion of the act under consideration, in so far as it is sought to be applied in this case, is an attempt to regulate the shipment of freight into this State from another State. It operates directly upon the interstate shipment or transportation, and limits or restricts the carrier's freedom to ship or transport by the route which the carrier might deem best, and places the control of the route wholly in the hands of the shipper, except in the contingency of some strike or casualty preventing the running of trains on the designated route. The carrier is deprived of all right to contract to ship by the route which the carrier would choose, and is unable to vary the route designated by the shipper, no matter what circumstances might exist making a variation desirable, short of a casualty preventing the running of the trains. Such a restriction on the freedom of interstate contract and transportation, we do not think is warranted by any necessity arising from domestic peace, and clearly invades the Federal jurisdiction over interstate commerce.

In so far as the statute may be valid as a regulation of the local or internal commerce of the State, there was no testimony tending to show a violation of such statute within the State, and the nonsuit was proper also on this ground.

The judgment of the Circuit Court is affirmed.

MR. JUSTICE POPE *concurs in the result.*